## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| URIEL ZAMORA, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ADAPTHEALTH CORP.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

URIEL ZAMORA ("Plaintiff"), individually and on behalf all others similarly situated ("Class Members") brings this action against ADAPTHEALTH CORP. ("AdaptHealth" or "Defendant") and alleges as follows upon personal knowledge as to Plaintiff's own actions, upon Plaintiff's attorney's investigation, facts of public record, and upon information and belief as to all other allegations.

### INTRODUCTION

1.      Plaintiff brings this Class action against Defendant for its failure to properly secure and safeguard Plaintiff's and Class Members' personally identifiable information ("PII") and other and protected health information ("PHI"), resulting in a devastating data breach.

2.      AdaptHealth is a nationwide network of medical equipment companies providing home healthcare solutions. The company operates across 48 states and makes 38,835 deliveries a day.[1]

3.      On or before June 15, 2026, a threat actor infiltrated AdaptHealth's data systems and cloud-based business applications including electronic health record system portals, patient

---

[1] *See* https://adapthealth.com/ (last visited July 7, 2026).

management systems and document storage platforms, and exfiltrated information including patients' PII and PHI, and a stored password file associated with insurance billing (the "Data Breach").[2]

4.    According to Defendant, the Data Breach was the result of a cyberattack that compromised a user session associated with a third-party contractor.[3]

5.    Defendant learned of the Data Breach on June 15, 2026.[4]

6.    The Data Breach has affected potentially millions of individuals; Defendant serves more than 4.2 million patients across the United States.[5]

7.    On June 27, 2026, AdaptHealth determined that the incident was material "due to the nature and potential volume of the data that is at risk."[6]

8.    On July 2, 2026, Defendant filed a material cybersecurity incident report with the SEC.[7]

---

[2]    *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/1725255/000110465926080297/ahco-20260627x8k.htm#fact-identifier-24    (last    visited    July    7,    2026);    *see    also* https://www.marketwatch.com/story/adapthealth-investigates-social-engineering-cyberattack-4f4324c0 (last visited July 7, 2026).

[3]    *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/1725255/000110465926080297/ahco-20260627x8k.htm#fact-identifier-24 (last visited July 7, 2026).

[4] *See id*.

[5]    *See* https://stocklight.com/stocks/us/nasdaq-ahco/adapthealth/annual-reports/nasdaq-ahco-2025-10K-25663762.pdf (last visited July 7, 2026).

[6] *Id*.

[7] *Id*.

9. Defendant has not disclosed the Data Breach to Plaintiff or any Class Member directly and has instead reported the Data Breach to the Securities and Exchange Commission.[8] The Form 8-K is also posted on its website.[9]

10. Plaintiff's claims arise from Defendant's failure to adequately secure and safeguard PII and PHI entrusted to Defendant for authorized use only, and Defendant's obligation to properly store and transfer said information.

11. Plaintiff and Class Members seek damages, injunctive and declaratory relief from Defendant for injuries sustained and that will be sustained as a direct and proximate result of Defendant's failure to maintain Plaintiff's and Class Members' PII and PHI under industry standards, and Defendant's failure to provide adequate notice of the Data Breach to Plaintiff and Class Members.

12. Defendant failed to take precautions reasonably calculated to keep Plaintiff's and Class Members' Private Information secure.

13. Defendant owes Plaintiff and Class Members the duty to take all reasonable and necessary measures to keep the PII and PHI secure from unauthorized access.

14. Defendant solicited, collected, used, and derived benefits from the PII and PHI, but failed to implement or maintain adequate security practices to protect the PII and PHI.

15. Defendant is liable for the Data Breach and the foreseeably consequent unlawful access to Plaintiff's and Class Members' PII and PHI, including out-of-pocket expenses, and those

---

[8] *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/1725255/000110465926080297/ahco-20260627x8k.htm#fact-identifier-24 (last visited July 7, 2026).

[9] *See* https://adapthealth.com/pages/financials?srsltid=AfmBOoptLJM2KCwa0Rv6AL7coxgDwPLrLP8wLUGL9fk2SRgVGO11EJoR at "Current Report" (last visited July 7, 2026).

associated with reasonable mitigation measures that Plaintiff and Class Members may employ, and other damages.

16. In the ordinary course of Defendant's business, it acquires, possesses, analyzes, and utilizes Plaintiff's and Class Members' PII and PHI.

17. Plaintiff's and Class Members' PII and PHI, entrusted to Defendant on the mutual understanding that Defendant would protect same against disclosure, was targeted, compromised, and unlawfully accessed in the Data Breach.

18. Defendant had a duty to implement reasonable data security practices necessary to protect sensitive, confidential and personal information entrusted to it because it is reasonably foreseeable that exposure of Plaintiff's and Class Members' PII and PHI to unknown and criminal third parties, particularly hackers, would injure Plaintiff and Class Members, including identity theft and other long-ranging financial and/or identity impersonation problems.

19. Attempting to mitigate the resulting injuries and risks requires taking preventive or protective measures that require significant resources, including money and time, to monitor health records and email accounts.

20. Plaintiff and Class Members now face a heightened and imminent risk of fraud, identity theft, and private information dissemination on the dark web that will persist for their lifetimes.

21. Plaintiff and Class Members suffered tangible injuries, including the diminished value of their PII and PHI, lost time and opportunity costs from mitigating the Data Breach consequences, loss of the benefit of their bargain with Defendant to maintain their PII and PHI in a reasonably protected manner, and the actual misuse of their compromised data, such as increased spam communications.

4

22.    As a result, Plaintiff and Class Members must spend significant additional time, money, and energy to protect themselves from these additional crimes to the extent possible. All of this will need to be done to attempt to prevent the clear intent of hackers when they broke into Defendant's network to steal and monetize this data in fraudulent and criminal transactions.

23.    Plaintiff brings this action on behalf of all persons whose PII and PHI, was compromised in the Data Breach as a result of Defendant's failure to: (i) adequately protect the PII and PHI of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected PII and PHI using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach.

24.    Plaintiff, individually and on behalf of Class Members, asserts the following claims against Defendant: (I) Negligence, (II) Negligence *Per Se*, (III) Breach of Implied Contract, (IV) Unjust Enrichment, (V) Breach of Confidence, and (VI) Declaratory Judgment. Plaintiff and Class Members seek damages as well as injunctive relief.

## PARTIES

25.    Plaintiff URIEL ZAMORA ("Zamora") is an adult individual and at all relevant times herein has been a resident of Illinois, Cook County. Plaintiff has been a patient of Defendant's since September of 2025. Plaintiff brings this suit in his personal capacity and on behalf of all Class Members.

26.    Defendant ADAPTHEALTH CORP. ("AdaptHealth") is a Delaware corporation headquartered and having its principal place of business in Plymouth Meeting, Pennsylvania, which lies in this District. AdaptHealth is a national network of full-service medical equipment

companies that serves millions of patients across forty-eight states with six hundred sixty-nine locations.[10]

## JURISDICTION

27.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the proposed Class who are diverse from Defendant, and (4) there are more than 100 proposed Class members.

28.    This Court has personal jurisdiction over Defendant because Defendant maintains a principal place of business in this District, conducts substantial business in this District, and the events giving rise to Plaintiff's claims arise out of Defendant's contacts with this District.

29.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendant is a resident and citizen of this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### A.    *Plaintiff and Data Breach General Allegations.*

30.    Defendant is a publicly traded, national home medical equipment and services provider that operates 669 locations, which serve 48 states and millions of patients.[11] AdaptHealth partners with more than three hundred hospital systems and supplies CPAP machines, diabetes

---

[10]    *See*    https://adapthealth.com/?srsltid=AfmBOooU1gF9slEXfHPoo41FzL_P-Zzb_jMrpw5R2apcUvowSr_yRilE (last visited July 7, 2026).
[11] *See id*.

care, mobility and home equipment, and respiratory care through hospitals, doctor's offices, and their own medical supply stores.[12]

31.    Plaintiff and Class Members are and/or were patients of AdaptHealth.

32.    Plaintiff has been and continues to be a patient of AdaptHealth since September of 2025.

33.    As a condition of receiving medical services from AdaptHealth, Plaintiff and Class Members provided their PII and PHI to AdaptHealth.

34.    In doing so, Plaintiff and Class Members entrusted AdaptHealth with their sensitive PII and PHI with the reasonable expectation and mutual understanding that AdaptHealth would comply with its obligations to confidentially and securely maintain such personal information from unauthorized access.

35.    In 2025, Plaintiff purchased his CPAP machine from AdaptHealth and provided mailing and contact information, credit card information, and doctors information with prescription notes to AdaptHealth.

36.    By obtaining, collecting, and storing Plaintiff's and Class Member's PII AdaptHealth assumed legal and equitable duties to protect same, and knew that it was responsible for protecting the PII from unauthorized disclosure.

**B.    *Defendant Breached its Duty to Secure Plaintiff's and Class Members' PII and PHI.***

37.    On or before June 15, 2026, AdaptHealth was the target of a cybersecurity incident that compromised its data network.

---

[12] *Id.*

38.     Upon information and belief, the PII and PHI of Plaintiff and Class Members that was impacted by the Data Breach was accessible, unencrypted, unprotected, and susceptible to acquisition and/or exfiltration by unauthorized individuals.

39.     As a healthcare organization, AdaptHealth knew or reasonably should have known that it must comply with healthcare industry standards related to data security and all federal and state laws protecting this highly sensitive and personal PII and PHI and provide adequate notice if this information is disclosed without proper authorization.

40.     However, AdaptHealth does not appear to have provided any written notice to impacted individuals regarding the Data Breach, leaving patients uncertain about how to safeguard themselves. And, therefore, AdaptHealth has largely put the burden on Plaintiff and Class Members to take measures to protect themselves from identity theft and fraud.

41.     The Data Breach occurred as a direct result of AdaptHealth's failure to implement and follow basic security procedures to protect Plaintiff's and Class Members' PII and PHI.

42.     Upon information and belief, AdaptHealth funds its data security measures from general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

43.     Defendant recognized it had a duty to protect PII and PHI. In accordance with AdaptHealth's Privacy Notice[13] published on its website, Defendant is "required by law to [m]aintain the privacy of protected health information" of its patients. Further, the Privacy Notice represents that AdaptHealth "take[s] great care with [patients'] personal information to ensure [they] are respected and protected at all times," but AdaptHealth failed to do so.

44.     At all relevant times, AdaptHealth knew it was storing sensitive PII and PHI and that, as a result, it would be an attractive ongoing target for cybercriminals.

---

[13] *See* https://adapthealth.com/pages/hipaa-privacy-policy (last visited July 7, 2026).

45.     AdaptHealth also knew that a breach of its systems, and exposure of the PII and PHI stored therein, would result in the increased risk of identity theft and fraud against the individuals whose PII and PHI was compromised.

46.     Despite its legal and equitable duties, AdaptHealth failed to implement reasonable data security measures to protect Plaintiff's and Class Member's PII and PHI and ultimately allowed threat actors to breach its computer systems and exfiltrate Plaintiff's and Class Members' PII and PHI stored therein.

47.     The type and breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves Plaintiff and Class Members especially vulnerable to identity theft, tax fraud, credit and bank fraud, and more.

**C.     Healthcare Organizations Are Frequent Target for Cybercriminals.**

48.     AdaptHealth was undoubtably a target due to its status as a healthcare entity that collects, creates, and maintains PII and PHI.

49.     Healthcare organizations have become a main target for cybercriminals because they "hold a massive amount of patient data — including medical records, financial information, names and addresses."[14]

50.     In the context of data breaches, healthcare is a profoundly affected industry sector. Further, cybersecurity breaches in the healthcare industry are particularly devastating, given the frequency of such breaches and the fact that healthcare providers maintain highly sensitive and detailed PII and PHI.[15]

---

[14] Elise Takahama, *Why health care has become a top target for cybercriminals*, THE SEATTLE TIMES (Feb. 25, 2024), https://www.seattletimes.com/seattle-news/health/why-health-care-has-become-a-top-target-for-cybercriminals/.

[15] *See id.*

51.    Despite the prevalence of public announcements of data breaches and data security compromises, Defendant failed to take appropriate steps to protect Plaintiff's and Class Members' PII and PHI from being compromised.

52.    AdaptHealth failed to properly train its employees as to cybersecurity best practices and to maintain proper staffing and processes for responding to and preventing network intrusions.

53.    AdaptHealth failed to implement sufficient processes to quickly detect and respond to data breaches, security incidents, or intrusions.

54.    AdaptHealth failed to encrypt Plaintiff's and Class Members' Private Information and monitor user behavior and activity to identify possible threats.

55.    AdaptHealth failed to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information of Plaintiff and Class Members.

56.    AdaptHealth failed to timely and accurately disclose that Plaintiff's and Class Members' PII and PHI had been improperly acquired or accessed.

57.    And AdaptHealth knowingly disregarded standard information security principles, despite obvious risks, by allowing unmonitored and unrestricted access to unsecured PII.

**D.    *Defendant Failed to Comply with FTC Guidelines***

58.    Despite its alleged commitments to securing sensitive data, AdaptHealth failed to follow FTC guidelines.

59.    The Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") prohibits businesses from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for sensitive personal information is an "unfair practice" in violation of the FTC Act.

60.     Accordingly, the FTC advises that data security considerations should be factored into all business decision-making.[16] To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII and PHI.

61.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[17] The guidelines explain that businesses should:

    a)  protect the personal customer information that they keep;

    b)  properly dispose of personal information that is no longer needed;

    c)  encrypt information stored on computer networks;

    d)  understand their network's vulnerabilities; and

    e)  implement policies to correct security problems.

62.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.[18]

63.     The FTC recommends that businesses limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[19]

---

[16] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Aug. 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/920a_start_with_security_en_aug2023_508_final_0.pdf.

[17] *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N (Oct. 2016), https://bit.ly/3u9mzre.

[18] *See id*.

[19] *Start with Security: A Guide for Business*, FED. TRADE COMM'N (Aug. 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/920a_start_with_security_en_aug2023_508_final_0.pdf.

64. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

65. AdaptHealth failed to properly implement basic data security practices and provide timely notice to the individuals whose personal information was compromised in the Data Breach, despite its knowledge of the incident and its obligations to safeguard such information.

66. AdaptHealth's failure to employ reasonable and appropriate measures to protect against unauthorized access to PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

### E. *Defendant Failed to Follow Industry Standards*

67. AdaptHealth further failed to follow industry standard practices in securing PII and PHI.

68. As previously shown, experts studying cyber security routinely identify healthcare related entities as being particularly vulnerable to cyberattacks because of the value of the PII and PHI which they collect and maintain.

69. AdaptHealth was at all times fully aware of its obligations to Plaintiff and Class Members regarding their personal information and of the severe consequences that would result from its failure to take adequate measures to protect this information.

70. Several industry best practices have been identified that at a minimum should be implemented by healthcare entities like Defendant, including but not limited to, educating all

employees on the risks of cyber-attacks; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

71.    Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

72.    Upon information and belief, AdaptHealth failed to meet the minimum standards for reasonable cybersecurity readiness, thus opening the door to cybercriminals and the Data Breach.

### F.    *Defendant Violated HIPAA and HITECH*

73.    HIPAA circumscribes security provisions and data privacy responsibilities designed to keep medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information ("PHI").[20]

---

[20] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

74.    HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure confidentiality, integrity, and security of PII and PHI is properly maintained.[21]

75.    The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

a) Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b) Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c) Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d) Failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e) Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f) Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

---

[21] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

g) Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h) Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i) Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

76. Defendant acknowledges in its Privacy Notice that AdaptHealth will follow the law regarding health care privacy.[22]

77. Defendant thus agrees that it will comply with HIPAA. The Data Breach, however, demonstrates that Defendant indeed failed to comply with safeguards mandated by HIPAA regulations.

78. AdaptHealth is also required to follow the regulations for safeguarding electronic medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

79. Both HIPAA and HITECH obligate AdaptHealth to follow reasonable security standards, respond to, contain, and mitigate security violations, and to protect against disclosure of sensitive Private Information. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); 45 C.F.R. § 164.530(f); 42 U.S.C. § 17902.

---

[22] *See* https://adapthealth.com/pages/hipaa-privacy-policy (last visited July 7, 2026).

*G.*      ***Cyberattacks and Data Breaches Cause Disruption and Put Individuals at an Increased Risk of Fraud and Identity Theft.***

80.      Cyberattacks and data breaches at companies that store PII and PHI are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

81.      The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[23]

82.      That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal personally identifiable information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims and to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

83.      Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

---

[23] *See* https://www.gao.gov/assets/gao-07-737.pdf (last visited July 7, 2026).

16

84.    Theft of PII and PHI is serious. The FTC warns consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, open new utility accounts, and incur charges and credit in a person's name.

85.    The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (and consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing freezes on their credit, and correcting their credit reports.[24]

86.    PII and PHI are valuable to identity thieves, and if they can get access to it, they will use it to among other things: open a new credit card or loan, change a billing address so the victim no longer receives bills, open new utilities, obtain a mobile phone, open a bank account and write bad checks, use a debit card number to withdraw funds, obtain a new driver's license or ID, and/or use the victim's information in the event of arrest or court action.

87.    Moreover, theft of PII and PHI is gravely serious because this information is an extremely valuable property right. Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase PII on the black market for the purpose of target-marketing their products and services to the physical maladies of data breach victims themselves.

88.    As discussed above, PII and PHI is such a valuable commodity to identity thieves, and once the information has been compromised, criminals often trade the information on the "cyber black- market" for years.

---

[24] *See* https://www.identitytheft.gov/Steps (last visited July 7, 2026).

89.     This Data Breach was a financially motivated data breach, as the only reason the cybercriminals go through the trouble of running a targeted cyberattack against companies like Defendant are to get information that they can monetize by selling on the black market for use in the kinds of criminal activity described herein. This data demands a much higher price on the black market.

90.     Cybercriminals can post stolen PII and PHI on the cyber black market for years following a data breach, thereby making such information publicly available. Identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit as well as protecting themselves in the future.

91.     It is within this context that Plaintiff and Class Members must now live with the knowledge that their PII is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black market.

92.     Plaintiff and Class Members must now take the time and effort (and spend the money) to mitigate the actual and potential impact of the Data Breach on their everyday life, including purchasing identity theft and credit monitoring services every year for the rest of their lives, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions and healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

93.     Moreover, Plaintiff and Class members have an interest in ensuring that their PII and PHI, which remain in the possession of Defendant, is protected from further public disclosure by the implementation of industry standards and statutorily compliant security measures and

18

safeguards. Defendant has shown itself to be wholly incapable of protecting Plaintiff's and Class Members' PII and PHI.

**H.    *Plaintiff's Experiences and Injuries Caused by the Data Breach***

94.    Plaintiff and Class Members are current and former patients of AdaptHealth.

95.    Specifically, Plaintiff has been a patient of AdaptHealth since September of 2025.

96.    As a prerequisite of being able to obtain medical care from AdaptHealth, Defendant required Plaintiff and Class Members to provide it with their PII and PHI.

97.    In such capacity, Plaintiff entrusted Plaintiff's PII to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such PII confidential and secure from unauthorized access.

98.    AdaptHealth has the PII and PHI that AdaptHealth required Plaintiff and Class Members to provide.

99.    Specifically, in 2025, Plaintiff purchased his CPAP machine from AdaptHealth and provided mailing and contact information, credit card information, and doctors information with prescription notes to AdaptHealth.

100.    In requesting and maintaining Plaintiff's PII and PHI for business purposes, Defendant expressly and impliedly promised, and undertook a duty, to act reasonably in its handling of this sensitive information.

101.    Plaintiff only allowed AdaptHealth to maintain, store, and use his PII and PHI because Plaintiff believed that Defendant would use basic security measures to protect this information, such as requiring passwords and multifactor authentication to access databases storing the PII and PHI. AdaptHealth retained Plaintiff's PII and PHI within its possession and control in its network(s) at the time of the Data Breach.

102. Defendant did not, however, take proper care of Plaintiff's PII and PHI, causing its exposure to and exfiltration by cybercriminals as a direct result of Defendant's inadequate security measures.

103. Plaintiff and Class Members' PII and PHI were unlawfully accessed and exfiltrated from Defendant's network(s) by a third party without Plaintiff's consent or authorization.

104. Plaintiff is very careful about sharing their sensitive personal information and has never knowingly transmitted unencrypted PII and PHI over the internet or any other unsecured source. Plaintiff stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Plaintiff chooses unique usernames and passwords for his various online accounts, changing and refreshing them as needed to ensure his information is as protected as it can be. When it is available, Plaintiff uses two-factor or multifactor authentication to add an extra layer of security to his private information.

105. As a result of the Data Breach, AdaptHealth's misconduct caused Plaintiff significant injuries and harm, including emotional distress regarding the misuse and loss of the privacy of Plaintiff's PII and PHI, which is undoubtedly being sold on the Dark Web.

106. Further, Plaintiff has suffered imminent and impending injury arising from the present and ongoing risk of fraud and identity theft, in addition to lost time, annoyance, interference, and inconvenience due to Defendant's inadequate cybersecurity.

107. Plaintiff estimates that he spent several hours responding to the Data Breach by researching the Data Breach, monitoring relevant accounts for suspicious activity and fielding spam/phishing calls. Plaintiff continues to review Plaintiff's accounts for fraud.

108. Additionally, Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII and PHI—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and because of the Data Breach.

109. Future identity theft monitoring is reasonable and necessary, and such services will include future costs and expenses, as Plaintiff has a continuing interest in ensuring that his PII and PHI, which remain in Defendant's possession, are protected and safeguarded from future breaches.

110. Additionally, Plaintiff must immediately devote time, energy, and money to: 1) closely monitor his bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than he already does; 3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them. Plaintiff has taken or will be forced to take these measures in order to mitigate his damages as a result of the Data Breach.

111. Once PII and PHI are exposed, there is little that can be done to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiff will need to maintain these heightened measures for years, and possibly Plaintiff's entire life as a result of Defendant's misconduct.

112. Because of the Data Breach, Defendant inflicted injuries upon Plaintiff and Class Members. And Defendant has done little to provide Plaintiff and the Class Members with relief for the damages they suffered.

## CLASS ALLEGATIONS

113.    Plaintiff brings this Class Action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The "Class" that Plaintiff seeks to represent is defined as follows:

**Class Definition.** All persons whose PII and PHI were maintained by AdaptHealth and were compromised in the Data Breach.

114.    Excluded from the Class are Defendant, its subsidiaries and affiliates, officers, directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families, all judges assigned to hear any aspect of this litigation, their immediate family members; and those individuals who make a timely and effective election to be excluded from this matter using the correct protocol for opting out.

115.    The proposed Class definition is based on current information and may be modified as necessary during discovery or when moving for Class certification to reflect any new or changed facts.

116.    **Numerosity**: The Class likely includes many thousands or more of members, with exact numbers and identities determinable from Defendant's records, including those related to the Data Breach.

117.    **Commonality**: This action involves common questions of law and fact that predominate over individual issues. These include whether Defendant:

    a)  Failed to timely notify Plaintiff and Class Members of the Data Breach;

    b)  Had a duty to protect their PII and PHI;

    c)  Failed to safeguard PII and PHI adequately;

d) Was negligent in handling PII and PHI;

e) Violated laws by failing to notify of the Data Breach;

f) Failed to implement reasonable security procedures;

g) Negligently caused the Data Breach;

h) Entered into an implied contract and breached it;

i) Was unjustly enriched;

j) Breached its fiduciary duty;

k) Should provide damages and/or injunctive relief.

118.    **Typicality**: Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII and PHI, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class Members and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

119.    **Adequacy of Representation**: Plaintiff is an adequate representative, with no conflicting interests.  Plaintiff's claims align with those of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical as explained above.

120.    **Superiority**: Class action is superior due to impracticality of individual litigation, offering economies of scale and uniform decision-making. It allows for efficient adjudication without unnecessary duplication of effort and expense. Class Action treatment is a superior approach for fair and efficient adjudication, enabling numerous Class Members to pursue common

claims simultaneously. It prevents unnecessary duplication and allows for modest claims to be litigated efficiently, which would otherwise be economically impractical for individual Class Members.

121. **Manageability**: The litigation is manageable due to Defendant's uniform conduct and consistent legal provisions, ensuring consistent outcomes and avoiding unnecessary duplication. The prosecution of this lawsuit as a class action presents no significant manageability issues. Adequate notice can be provided to Class Members using information from Defendant's records.

122. **Predominance:** Common questions of law and fact predominate over individual issues, as similar violations, practices, and injuries are involved. Defendant's liability and damages are common to all Class Members. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

123. **Injunctive Relief:** Injunctive relief is appropriate due to Defendant's actions affecting the Class generally. Without a Class-wide injunction, Defendant may continue to fail in securing Class Members' private information, fail to provide proper notification regarding the Data Breach, and act unlawfully as alleged.

124. **Ascertainability:** Class Members are ascertainable based on objective criteria and can be identified through Defendant's records.

<u>**CAUSES OF ACTION**</u>

<u>**COUNT I: NEGLIGENCE**</u>
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

125. Plaintiff repeats and realleges the allegations above as if fully alleged herein.

126. Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting their PII and PHI in its possession, custody, and control.

127. Defendant's duty to use reasonable care arose from several sources, including but not limited to those described below.

128. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII and PHI, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

129. Defendant had a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

130. Defendants knew or should have known of the risk inherent in collecting the PII and PHI of Plaintiff and Class Members and the importance of having adequate security.

131. Defendant owed a duty of care to Plaintiff and Class Members whose PII and PHI were entrusted to it. Defendant's duties included, but were not limited, to the following:

a) To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting PII and PHI in its possession;

b) To protect patients' PII and PHI using reasonable and adequate security procedures and systems compliant with industry standards;

c) To have procedures in place to prevent the loss or unauthorized dissemination of PII and PHI in its possession;

d) To employ reasonable security measures and otherwise protect Private Information of Plaintiff and Class Members pursuant to HIPAA and the FTCA;

25

e) To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f) To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

132. Defendant's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair… practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

133. Further, Defendant's duty also arose because Defendant was bound by industry standards to protect its patients' confidential PII and PHI.

134. Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Defendant owed them a duty of care.

135. Upon information and belief, Defendant, through its actions and omissions, breached its duty of care to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding their Private Information within Defendant's possession, including by failing to use reasonable measures to prevent unauthorized access, detect the Data Breach in a timely manner, and provide prompt notice so affected individuals could mitigate the resulting harm.

a) Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b) Failing to adequately monitor the security of its networks and systems;

c) Failing to periodically ensure that its email system maintained reasonable data security safeguards;

26

d) Allowing unauthorized access to Class Members' PII and PHI;

e) Failing to comply with the FTCA;

f) Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

g) Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

136. Upon information and belief, Defendant acted with reckless disregard for the rights of Plaintiff and Class Members by failing to provide prompt individual notice of the Data Breach such that Plaintiff and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the PII and PHI compromised in the Data Breach.

137. Defendant had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Defendant with their PII and PHI was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems (and the PII and PHI that it stored on them) from attack.

138. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' PII and PHI to be compromised, exfiltrated, and/or misused, as alleged herein.

139. Defendant's breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their PII and PHI. As a result of Defendant's negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their PII and PHI, which upon information and belief, is still in the possession of third parties, will be used for fraudulent purposes.

140.    Defendant also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' PII and PHI and promptly notify them about the Data Breach.

141.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

142.    The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

143.    Plaintiff and Class Member have suffered injuries and are entitled to damages in an account to be proven at trial.

144.    In addition to monetary relief, Plaintiff and Class Member are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

## COUNT II: NEGLIGENCE *PER SE*
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

145.    Plaintiff repeats and realleges the allegations above as if fully alleged herein.

146.    Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Plaintiff's and Class Members' PII and PHI. Various FTC publications and orders also form the basis of Defendant's duty.

147.    Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect PII, contrary to industry standards and FTC guidelines. This conduct was particularly unreasonable given the nature and amount of PII and PHI involved.

148.     As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have been caused to suffer and will continue to suffer the continued risks of exposure of their PII and PHI, which the Defendant still possesses, and may result in further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in its continued possession.

### COUNT III: BREACH OF IMPLIED CONTRACT
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

149.     Plaintiff repeats and re-alleges the allegations above as if fully alleged herein.

150.     When Plaintiff and Class Members provided their PII and PHI to Defendant for healthcare services, they entered into agreement and implied contracts with Defendant that Defendant consented to protect their Private Information.

151.     Defendant requested, offered, and induced Plaintiff and Class Members to provide their Private Information in Defendant's regular course business to obtain Defendant's services.

152.     Plaintiff and Class Members thereby accepted and provided PII and PHI to Defendant, as requested, to obtain healthcare services.

153.     In entering into such agreements with Defendant, Plaintiff and Class Members reasonably believed and expected Defendant's data security practices to be compliant with relevant laws and regulations and consistent with industry standards given the value of PII and PHI.

154.     Plaintiff and Class Members provided PII and PHI to Defendant with the reasonable belief and expectation that Defendant would obtain adequate data security.

155.     Defendant failed to obtain adequate data security.

29

156.    Plaintiff and Class Members would not have entrusted their PII and PHI to Defendant in the absence of the implied contract between them for Defendant to keep their information reasonably secure.

157.    Plaintiff and Class Members would not have entrusted their PII and PHI to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

158.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

159.    Defendant breached its implied contracts with Class Members by failing to safeguard and protect their PII and PHI.

160.    As a direct and proximate result of Defendant's breach of the contracts implied, Class Members sustained damages, including the loss of the benefit of the bargain.

161.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the Data Breach in breach of contract.

162.    Plaintiff and Class Members are entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT IV: UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

163.    Plaintiff repeats and re-alleges the allegations above as if fully alleged herein.

164.    This Count is pleaded in the alternative to Count III.

165.    Plaintiff and Class Members conferred a benefit on Defendant by entrusting their PII and PHI to it and by paying for healthcare services that should have included cybersecurity

measures sufficient to protect that PII and PHI. Plaintiff and Class Members did not receive such protection.

166.    Upon information and belief, Defendant funds its data-security measures entirely from its general revenue, including the payments made to it by Plaintiff and Class Members.

167.    Accordingly, a portion of the payments made by Plaintiff and Class Members was to be used to provide a reasonable and adequate level of data security in compliance with applicable state and federal regulations and industry standards, and the amount of each payment allocated to data security is known to Defendant.

168.    Defendant has retained the benefits of its unlawful conduct, including those portions of the payments received from Plaintiff and Class Members that should have funded the adequate cybersecurity practices Defendant failed to provide.

169.    Upon information and belief, Defendant knew that Plaintiff and Class Members conferred a benefit upon it, and Defendant accepted that benefit. Defendant profited from these transactions and used Plaintiff's and Class Members' PII and PHI for its business purposes; while failing to apply the payments it received toward adequate data-security measures that would have secured that PII and PHI and prevented the Data Breach.

170.    Had Plaintiff and Class Members known that Defendant had not adequately secured their PII and PHI, they would not have agreed to provide it to Defendant.

171.    In light of Defendant's conduct alleged herein, it would be unjust and inequitable to permit Defendant to retain the benefit of its wrongful conduct.

172.    Upon information and belief, and as a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered, or remain at a continued and imminent risk of suffering, injury including, without limitation: (i) actual identity theft; (ii) the loss of the

31

opportunity to control how their Private Information is used; (iii) the compromise, publication, or theft of their Private Information; (iv) out-of-pocket expenses associated with preventing, detecting, and recovering from identity theft and the unauthorized use of their Private Information; (v) lost opportunity costs and lost productivity arising from efforts to address and mitigate the actual and future consequences of the Data Breach, including time spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant's possession and subject to further unauthorized disclosure for so long as Defendant fails to undertake adequate measures to protect the Private Information in its continued possession; and (vii) future costs in time, effort, and money that will be expended to prevent, detect, contest, and repair the consequences of the Data Breach for the remainder of Plaintiff's and Class Members' lives.

173. Plaintiff and Class Members are entitled to full refunds, restitution, or damages from Defendant, or to an order proportionally disgorging all profits, benefits, and other compensation Defendant obtained through its wrongful conduct, including through the imposition of a constructive trust from which Plaintiff and Class Members may seek restitution or compensation.

174. Plaintiff and Class Members may lack an adequate remedy at law against Defendant and therefore plead this claim for unjust enrichment in addition to, or in the alternative to, the other claims pleaded herein.

<u>**COUNT V: BREACH OF CONFIDENCE**</u>
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

175. Plaintiff repeats and re-alleges the allegations above as if fully alleged herein.

176. Defendant's actions constituted an intrusion into Plaintiff's and Class Members' seclusion. By failing to safeguard their PII and PHI and misusing or disclosing it to unauthorized

parties, Defendant invaded their privacy in a manner that would be highly offensive to an ordinary person. This invasion included publicizing private facts and causing significant anguish or suffering.

177. At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' PII and PHI that Plaintiff and Class Members entrusted to Defendant.

178. As alleged herein and above, Defendant's relationship with Plaintiff and the Class was governed by terms and expectations that Plaintiff's and the Class Members' Private Information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

179. Given the foreseeability of harms from data breaches and their widespread occurrence, Defendant was substantially certain that its failure to implement adequate cybersecurity would lead to an invasion of Plaintiff's privacy resulting in a breach of confidence.

180. Defendant knew that an ordinary person would find the exposure of their own PII highly objectionable. By misusing and disclosing PII without consent, Defendant invaded Plaintiff's and Class Members' right to maintain the confidentiality in their PII and PHI.

181. Defendant also concealed and delayed reporting the Data Breach without consent.

182. Upon information and belief, Defendant's failure to implement reasonable cybersecurity safeguards led to the publication of Plaintiff's and Class Members' PII on the dark web and through other channels, further exacerbating the invasion of their Personal Information.

183. As a direct and proximate result of Defendant's breach of its confidence with Plaintiff and the Class, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) identity theft; (ii) the loss of the opportunity how their PII and PHI are used; (iii)

33

the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of current and former people; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

184.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and the Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT VI: DECLARATORY JUDGMENT
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

185.    Plaintiff repeats and re-alleges the allegations above as if fully alleged herein.

186.    Pursuant to its authority under CPLR § 3001, this Court should enter a judgment declaring the rights and legal relations of the parties and to grant such further relief as may be necessary. The Court likewise has broad authority to restrain tortious conduct and conduct that violates the laws and regulations described in this Complaint.

34

187.    Defendant owes a duty of care to Plaintiff and Class Members that requires it to adequately secure their Private Information.

188.    Defendant remains in possession of Plaintiff's and Class Members' Private Information.

189.    Plaintiff alleges that Defendant's data-security measures remain inadequate. Plaintiff continues to suffer injury as a result of the compromise of their Private Information, and the risk persists that further compromises will occur in the future.

190.    Plaintiff requests that this Court enter a judgment declaring, among other things, that:

    a.  Defendant owes a legal duty to secure its patients' Private Information and to timely notify them of a data breach under the common law, HIPAA, and the FTC Act;

    b.  Defendant's existing security measures do not comply with its express or implied contractual obligations or its duties of care to provide reasonable security procedures and practices appropriate to protect its patients' Private Information; and

    c.  Defendant continues to breach this legal duty by failing to employ reasonable measures to secure its patients' PII and PHI.

191.    Plaintiff further requests that this Court issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with legal and industry standards to protect its patients' PII and PHI, including an order:

    a)  requiring Defendant to provide lifetime credit monitoring and identity-theft insurance to Plaintiff and Class Members; and

35

b) requiring Defendant, in order to comply with its express or implied contractual obligations and duties of care, to implement and maintain reasonable security measures, including, without limitation:

c) engaging third-party security auditors and penetration testers, as well as internal security personnel, to conduct periodic testing of Defendant's systems, including simulated attacks, penetration tests, and audits — and promptly correcting any problems or vulnerabilities those auditors identify;

d) engaging third-party security auditors and internal personnel to run automated security monitoring;

e) auditing, testing, and training its security personnel on any new or modified procedures;

f) segmenting its user applications, including by implementing firewalls and access controls—so that the compromise of one area does not permit intruders to access other portions of Defendant's systems;

g) conducting regular database scanning and security checks;

h) routinely and continually conducting internal training to instruct security personnel on how to identify, contain, and respond to a breach; and

i) meaningfully educating its patients about the threats to the security of their PII and PHI and the steps they should take to protect themselves.

192.    Absent an injunction, Plaintiff will suffer irreparable injury and will lack an adequate remedy at law to prevent another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. Should another breach occur, Plaintiff will have no adequate remedy at law because many of the resulting injuries are not readily quantifiable.

193.    The hardship to Plaintiff if an injunction does not issue outweighs the hardship to Defendant if it does. Plaintiff will likely be subjected to substantial and continuing identity theft and related damages absent an injunction. By contrast, the cost of Defendant's compliance with an injunction requiring reasonable prospective data-security measures is relatively minimal, and Defendant already bears a preexisting legal obligation to employ such measures.

194.    Issuance of the requested injunction will not disserve the public interest. To the contrary, it would serve the public by preventing a subsequent data breach at Defendant and thereby averting future injury to Plaintiff and the other patients whose Private Information would otherwise be further compromised.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands relief as follows:

a) An Order certifying this action as a Class action and appointing Plaintiff as a Class Representative and Plaintiff's counsel as Class Counsel;

b) Equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class members;

c) Equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the PII compromised during the Data Breach;

d) Equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e) Ordering Defendant to pay for not less than six years of credit monitoring services for Plaintiff and the Class;

f) An award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g) An award of punitive damages, as allowed by law;

h) An award of attorneys' fees and costs, and any other expenses, including expert witness fees;

i) Pre- and post-judgment interest on any amounts awarded; and

j) Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: July 7, 2026

_/s/ Mark C. Rifkin_

Mark C. Rifkin
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
270 Madison Ave
New York, NY 10016
Telephone: (212) 545-4600
rifkin@whafh.com

Rachele R. Byrd (_pro hac vice forthcoming_)
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
byrd@whafh.com

James F. Woods, Esq. (_pro hac vice forthcoming_)
Annie E. Causey, Esq. (_pro hac vice forthcoming_)
Olivia E. Pizzo, Esq. (_pro hac vice forthcoming_)
**WOODS LONERGAN PLLC**
60 East 42nd Street, Suite 1410

New York, NY 10165
Tel.: (212) 684-2500
jwoods@woodslaw.com
acausey@woodslaw.com
olivia.pizzo@woodslaw.com

*Attorneys for Plaintiff*